UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MIMEDX GROUP, INC.<br><br>                              Plaintiff<br><br>      -vs.-<br><br>LIVENTA BIOSCIENCE, INC., MEDLINE INDUSTRIES INC., and MUSCULOSKELETAL TRANSPLANT FOUNDATION<br><br>                              Defendants. | Civil Action No. 1:14-cv-1178-RWS<br><br>FIRST AMENDED COMPLAINT<br><br>(JURY TRIAL DEMANDED) |

Plaintiff MiMedx Group, Inc. ("MiMedx" or "Plaintiff") files this Complaint against Defendants Liventa Bioscience, Inc. ("Liventa"), Medline Industries Inc. ("Medline") and Musculoskeletal Transplant Foundation ("MTF") (collectively, "Defendants") and, in support thereof, alleges as follows:

## NATURE AND BASIS OF ACTION

1.    This is a civil action for Defendants' infringement of United States Patent Nos. 8,323,701; 8,642,092; 8,372,437; 8,597,687; 8,703,207; and 8,709,494 (collectively, the "Patents-in-Suit"). This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*

2.     This action also arises out of Liventa's and Medline's knowing and willful false and misleading representations about their AmnioClear™ and Revitalon™ products, respectively.   Liventa's and Medline's actions constitute false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C.  §  1125(a)(1)(B);  federal unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); false advertising in violation of the Georgia False Advertising Statute, O.C.G.A. §§ 10-1-420 *et seq.*;  unfair competition in violation of Georgia common law; and deceptive trade practices in violation of the Georgia Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370 *et seq.*

3.     MiMedx seeks, among other things, temporary, preliminary and permanent injunctive relief, monetary damages, punitive damages, and recovery of MiMedx's costs and reasonable attorneys' fees incurred in connection with this action.

## PARTIES

4.     Plaintiff MiMedx is a corporation organized and existing under the laws of the State of Florida.  MiMedx is registered to do business in the State of Georgia and maintains its headquarters and principal place of business at 1775 West Oak Commons Ct., Marietta, Georgia 30062.

2

5.     Upon information and belief, MTF is incorporated under the laws of Washington, D.C. with its principal place of business at 125 May Street, Suite 300, Edison, New Jersey 08837.

6.     Upon information and belief, MTF is a non-profit organization operating as a tissue bank and tissue processing facility.

7.     Upon information and belief, Medline is an Illinois Corporation with its principal place of business at 1 Medline Place, Mundelein, Illinois 60060.

8.     Upon information and belief, Medline is a manufacturer and distributor of healthcare supplies and is in the business of, among other things, marketing, distributing, offering to sell, and selling its tissue graft product Revitalon™ in the United States.

9.     Upon information and belief, Liventa, formerly known as AFCell Medical Inc., is a Delaware corporation with its principal place of business at 100 Four Falls Corporate Center, Suite 660, 1001 Conshohocken State Road, West Conshohocken, Pennsylvania 19428.

10.     Upon information and belief, Liventa is in the business of marketing, distributing, offering to sell, and selling its tissue graft product AmnioClear™ in the United States.

11.   Upon information and belief, AFCell Medical Inc. ("AFCell"), the company now known as Liventa, was founded in 2006 and is based in New Jersey with its principal place of business at 322 Route 46W, Suite 150, Parsippany, New Jersey 07054.

12.   Upon information and belief, AmnioClear™ and Revitalon™ products are made by MTF and, in turn, distributed by Liventa and Medline, respectively.

## JURISDICTION AND VENUE

13.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this case arises under the United States Patent Act, 35 U.S.C. §§ 100, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*

14.   This Court has jurisdiction over MiMedx's state law claims pursuant to 28 U.S.C. § 1367 and the doctrine of supplemental jurisdiction.

15.   This Court has personal jurisdiction over the Defendants because, upon information and belief, Defendants transact business within the State of Georgia including, but not limited to, contracting to supply goods or services in the State of Georgia, engaging in acts of patent infringement within the State of Georgia, engaging in acts outside the State of Georgia causing injury within the

4

State, and engaging in tortious acts within the State of Georgia. Defendants have purposefully and voluntarily placed their products, and/or caused their products to be placed, into the stream of commerce with the expectation that they will be purchased by consumers in this District. As such, Defendants have established minimum contacts with the forum such that the exercise of jurisdiction over them would not offend traditional notions of fair play and substantial justice.

16.    Upon information and belief, this Court has personal jurisdiction over Defendant MTF because it has continuous and systematic contacts with this State. MTF (1) intentionally markets and provides its services and processed tissues to residents of this State; (2) maintains a sales personnel in this State; and (3) enjoys substantial revenues from sales of its products and services in this State. For example, MTF expressly acknowledges on its website that it "cooperate[s] extensively with associations, organizations and companies that advance the science and practice of tissue and bone transplantation," including Georgia Health Sciences University. *See* http://www.mtf.org/partners.html.

17.    Upon information and belief, this Court has personal jurisdiction over Defendant Liventa because it has continuous and systematic contacts with this State. Liventa (1) intentionally markets and provides its tissue-based

products including AmnioClear™ to residents of this State; (2) transacts business with Georgia-based companies to enter the spinal treatment and related orthopedic treatment markets in this State; (3) maintains a sales personnel in this State; and (4) enjoys substantial revenues from sales of its products in this State. For example, Liventa does business in the State of Georgia and has, at a minimum, entered into partnership with CrossLink, a Georgia-based company, to "bring biologically active barrier attributes to the spine and related orthopedic markets." *See* http://liventabioscience.com/about-us.html.

18.   Upon information and belief, this Court has personal jurisdiction over Defendant Medline because Medline has continuous and systematic contacts with this State.   Medline (1) intentionally markets and provides its services and processed tissues to residents of this State; (2) maintains a sales force in this State; (3) enjoys substantial revenues from sales of its products and services in this State; (4) has manufacturing plants and employees in this State; (5) is registered to do business in this State; and (6) has previously been the subject of lawsuits in this Court and has admitted that it was a "for-profit corporation doing business in the State of Georgia." *See e.g.*, *Alexander v. Medline Industries, Inc.*, No. 13-cv-00140-TCB-RGV, slip op. at 1 (N.D. Ga. Oct. 17, 2013).

19.   Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400.

## BACKGROUND

### I.   MiMEDX  AND ITS PRODUCTS

20.   MiMedx develops, manufactures and markets innovative and unique regenerative bioactive products and bioimplants processed from placental human amniotic membrane.

21.   MiMedx has been manufacturing and distributing its innovative and unique bioactive healing products and devices for tissue regeneration since at least 2008.

22.   In 2011, MiMedx acquired Surgical Biologics LLC, expanding MiMedx's business by adding allografts and other products processed from human amniotic membranes to MiMedx's existing medical device product lines. MiMedx has distributed over 225,000 amniotic tissue grafts to patients in need thereof and achieved significant clinical outcomes in multiple therapeutic areas including, but not limited to, the fields of ophthalmology, spinal surgery, chronic wound treatment, dental treatment, orthopedic surgery, sports medicine, and urology.

23.   Over the years, MiMedx has spent millions of dollars researching and developing its proprietary placental tissue-based products and processes, and devotes significant financial resources each year in marketing as well.

24.   Because of the substantial expertise, investment of time, effort and financial resources required to bring new regenerative bioactive healing products and processes to the market, MiMedx has sought and secured an extensive patent portfolio related to its innovative tissue technology and products.

25.   MiMedx has also conducted extensive clinical and laboratory tests on its tissue graft products and is dedicated to providing safe, superior allografts.

26.   MiMedx has implemented strict quality controls on the tissue it uses.  Such controls include the implementation of a quality management system in compliance with both the Food and Drug Administration and the American Association of Tissue Banks.  Using this quality management system, MiMedx maintains strict control over each step of the manufacturing process.

27.   MiMedx has also established guidelines for donor eligibility, screening and testing.  All donor records and test results are reviewed by MiMedx before the release of the tissue.  Only tissues that are deemed suitable for transplant are released for use.

28.    Because of MiMedx's commitment to the development and testing of its products, MiMedx has become acclaimed for its novel placental tissue-based products.  Indeed, MiMedx's products are some of the most well-known and well-respected in the industry.

29.    Over the years, MiMedx has also diligently expanded and built its trade name and trademarks with respect to its placental tissue-based products, such that the commercial market has come to identify MiMedx's product lines with MiMedx.

30.    MiMedx's product lines include EpiFix® and AmnioFix®, which are tissue grafts processed from human amniotic membrane that is derived from donated placentas using MiMedx's proprietary technology.  MiMedx processes the human amniotic membrane through a proprietary system to produce a safe and effective tissue product, which is commonly referred to as an "allograft." MiMedx's products are utilized in a vast number of clinical treatments including, but not limited to, advanced wound care, orthopedic/spine surgery, and sports medicine applications.  In each of these areas, and many more, MiMedx's products help to reduce inflammation, enhance healing and reduce scar tissue formation, among other benefits.

## II.    THE PATENTS-IN-SUIT

31.    MiMedx has an extensive patent portfolio including the Patents-in-Suit covering placental tissue-based products.

32.    On December 4, 2012, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 8,323,701 (the "'701 patent"), entitled "Placental Tissue Grafts."  The '701 patent names John Daniel, Robert Tofe, Randall Spencer and John Russo as co-inventors.

33.    The '701 patent has been assigned to MiMedx, and MiMedx owns the entire right, title and interest to the patent.  As such, MiMedx has standing to sue and recover damages for infringement of the '701 patent and pursue any and all causes of actions and remedies, either legal and/or equitable, related thereto. A true and correct copy of the '701 patent is attached herein as Exhibit A.

34.    On February 4, 2014, the USPTO duly and legally issued United States Patent No. 8,642,092 (the "'092 patent"), entitled "Placental Tissue Grafts."  The '092 patent names John Daniel, Randall Spencer, John Russo and Robert Tofe as co-inventors.

35.    The '092 patent has been assigned to MiMedx, and MiMedx has standing to sue and recover damages for infringement of the '092 patent and pursue any and all causes of actions and remedies, either legal and/or equitable,

related thereto.  A true and correct copy of the '092 patent is attached herein as Exhibit B.

36.   On February 12, 2013, the USPTO duly and legally issued United States Patent No. 8,372,437 (the "'437 patent"), entitled "Placental Tissue Grafts."  The '437 patent names John Daniel as an inventor.

37.   The '437 patent has been assigned to MiMedx, and MiMedx has standing to sue and recover for infringement of the '437 patent and pursue any and all causes of actions and remedies, either legal and/or equitable, related thereto.   A true and correct copy of the '437 patent is attached herein as Exhibit C.

38.   On December 3, 2013, the USPTO duly and legally issued United States Patent No. 8,597,687 (the "'687 patent"), entitled "Methods for Determining the Orientation of a Tissue Graft."  The '687 patent names John Daniel as an inventor.

39.   The '687 patent has been assigned to MiMedx, and MiMedx has standing to sue and recover damages for infringement of the '687 patent and pursue any and all causes of actions and remedies, either legal and/or equitable, related thereto.  A true and correct copy of the '687 patent is attached herein as Exhibit D.

40.   On April 29, 2014, the USPTO duly and legally issued United States Patent No. 8,703,207 (the "'207 patent"), entitled "Placental Tissue Grafts." The '207 patent names John Daniel, Randall Spencer, Robert Tofe, and John Russo as co-inventors.

41.   The '207 patent has been assigned to MiMedx, and MiMedx has standing to sue and recover damages for infringement of the '207 patent and pursue any and all causes of actions and remedies, either legal and/or equitable, related thereto. A true and correct copy of the '207 patent is attached herein as Exhibit E.

42.   On April 29, 2014, the USPTO duly and legally issued United States Patent No. 8,709,494 (the "'494 patent"), entitled "Placental Tissue Grafts." The '494 patent names John Daniel as an inventor.

43.   The '494 patent has been assigned to MiMedx, and MiMedx has standing to sue and recover damages for infringement of the '494 patent and pursue any and all causes of actions and remedies, either legal and/or equitable, related thereto. A true and correct copy of the '494 patent is attached herein as Exhibit F.

## III.   INFRINGEMENT  OF THE  PATENTS-IN-SUIT  BY DEFENDANTS

44.   Upon  information  and  belief,  MTF  locates  and  screens  tissue donors, as well as processes and makes tissues for allografts.

45.   Upon  information  and  belief,  MTF  and  Liventa  entered  into  a supply  and  processing  partnership  through  which  MTF  processes  and  uses Liventa's  AmnioClear™  tissue  graft  to  be  sold  in  the  United  States  and  in  this judicial district.

46.   Upon  information  and  belief,  Liventa  markets,  sells,  and/or  offers  to sell the AmnioClear™ product in the United States and in this judicial district.

47.   Upon  information  and  belief,  the  AmnioClear™  product  is  a  tissue graft product which includes an amnion membrane and a chorion membrane.

48.   Upon  information  and  belief,  the  AmnioClear™  product  has  been and/or continues to have an asymmetric label on a portion of at least one side of the  tissue  graft  to  allow  direct  visual  determination  of  the  orientation  of  the tissue graft.

49.   Upon  information  and  belief,  the  Revitalon™  product  is  marketed, sold and/or offered for sale by Medline.

50.   Upon  information  and  belief,  MTF  has  entered  into  a  partnership among  and/or  between  Medline  and  Liventa  enabling  Medline  to  market,  sell

13

and/or offer for sale the Revitalon™ product in the United States and in this judicial district.

51.   Upon information and belief, the Revitalon™ product is a tissue graft product which includes an amnion membrane and a chorion membrane.

52.   Upon information and belief, the Revitalon™ product has been and/or continues to have an asymmetric label on a portion of at least one side of the tissue graft to allow direct visual determination of the orientations of the tissue graft.

53.   Upon information and belief, Liventa and MTF have infringed and/or continue to infringe one or more claims of the '701 patent, the '092 patent, the '437 patent, the '687 patent, the '207 patent, and the '494 patent by manufacturing, using, selling and/or offering for sale in the United States and in this judicial district the AmnioClear™ product.

54.   Upon information and belief, Medline and MTF have infringed and/or continue to infringe one or more claims of the '701 patent, the '092 patent, the '437 patent, the '687 patent, the '207 patent, and the '494 patent by manufacturing, using, selling and/or offering for sale in the United States and in this judicial district the Revitalon™ product.

14

55.   Upon information and belief, Liventa has been on actual notice of the '437 patent, and '701 patent, since at least as early as February 2013.  Upon information and belief, Liventa has been on actual notice of the '687 patent since at least as early as January 2014.

56.   Upon information and belief, MTF has been on actual notice of the '437 and '701 patent since at least as early as February 2013.  Upon information and belief, MTF has been on actual notice of the '687 patent since at least as early as January 2014.

57.   Upon information and belief, Defendant Medline has been on actual notice of the '437 patent, the '701 patent, and the '687 patent since at least as early as January 2014.

58.   Additionally, upon information and belief, Defendants have had constructive knowledge of certain of the Patents-in-Suit at least by virtue of the identification of the Patents-in-Suit on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents.

59.   Upon information and belief, Defendants have acted and continue to act without a reasonable basis for believing that they would not be liable for infringing the relevant Patents-in-Suit.

## IV.   DEFENDANTS' FALSE AND MISLEADING STATEMENTS

60.   Defendants are in no way affiliated with Plaintiff, or any of its related entities.

61.   Defendants and Plaintiff are direct competitors in the wound biologics market as well as the spine and orthopedics markets.

62.   Upon information and belief, Defendants Liventa and Medline have made and continue to make false and misleading statements regarding the nature and efficacy of their respective products, including but not limited to, the AmnioClear™ and Revitalon™ products, on their respective websites and in corresponding respective materials distributed to third parties, including customers and/or prospective customers.

### A.   Clinical Studies Falsely Attributed to AmnioClear™

63.   Upon information and belief, Liventa has knowingly made, and continues to make, false and misleading statements regarding the use of Liventa's AmnioClear™ product, as processed by MTF, in certain studies.

64.   In referring to these studies, Liventa states on its website that "data shows AmnioClear™ retains essential elements to help the body restore tissue functionality."   http://www.liventabioscience.com/difference.html.   Liventa's website also states that "[t]he amnion based allograft material used in the study

16

was AmnioClear™.” http://liventabioscience.com/news-results.html.

65.   In addition, Liventa, as AFCell, promoted the study via a press release published by PR Newswire, again falsely attributing the results of the study to Liventa's AmnioClear™ product.  http://www.prnewswire.com/news-releases/afcell-medical-reports-results-from-the-retrospective-study-of-a-novel-allograft-membrane-to-prevent-post-operative-adhesions-in-the-repair-of-peroneal-and-posterior-tibial-tendons-168457686.html.

66.   In support of the foregoing and more specifically, Liventa cites to studies by Dr. Richard M. Jay.  Liventa falsely and misleadingly suggests that Dr. Jay's studies used Liventa's AmnioClear™ product—a tissue processed by MTF—and clinical data regarding the same, when they did not.  Instead, such cited data in fact pertains to MiMedx's patented technology and products and is in no way related to AmnioClear™ products, as processed by MTF.

67.  Upon information and belief, Liventa knew and knows that Liventa's AmnioClear™ product, as processed by MTF, was not the product used in the studies authored by Dr. Jay.

68.   Upon information and belief, Liventa reproduced one of these same studies from Dr. Jay in "Orthopedics This Week," dated September 18, 2012, and in conjunction therewith falsely and misleadingly stated that the product

17

used in the study was Liventa's AmnioClear™ product, processed by MTF, when it was not.

69.   Liventa, upon information and belief, had and has actual knowledge that its statements regarding the tissue used in Dr. Jay's studies were and are misleading and false because "Orthopedics This Week" later issued a correction in its publication acknowledging that the tissue used in Dr. Jay's study was processed by MiMedx, and not by Liventa or its processor MTF, as was previously claimed.

70.   Nonetheless, Liventa's false and misleading statements regarding Dr. Jay's studies persist on its website and Liventa continues to tout the studies as support for the efficacy of its current product.

71.   Furthermore, Liventa's website also falsely and misleadingly includes photographs from another study that, according to the website, purports to have used Liventa's AmnioClear™ product, when it did not.  *See* http://www.liventabioscience.com/indications.html.  This study was done by Dr. Emran S. Sheikh and later published in the *International Wound Journal*. Contrary to Liventa's false and misleading photographs, the referenced study was not performed in connection with any of Liventa's products and was, in fact, a study on MiMedx's EpiFix® product.

72.   Upon information and belief, through materials accessible on Liventa's website and through materials distributed to customers and/or prospective customers, Liventa has marketed its AmnioClear™ product as being the subject of Dr. Jay's studies in an effort to induce customers and/or prospective customers to believe that Liventa's product has been the subject of these studies, when it was and is not.

73.   Upon information and belief, Liventa has made these false and misleading statements knowingly, with an intention to deceive Liventa's customers and/or prospective customers into believing that these statements are true when they are not.

74.   Liventa has performed the aforementioned acts globally, as well as within the United States and in this judicial district.

75.   Such false and misleading statements are, by their very nature, material to the purchasing decisions of Liventa's and MiMedx's customers and/or prospective customers.

76.   Such false and misleading statements and representations cause injury to MiMedx, the leading processor, marketer, and distributor of human amniotic tissue in the United States. Such injury includes, upon information and

belief, loss of sales to existing and and/or prospective MiMedx customers and/or prospective customers.

**B.    False   And   Misleading   Statements   Regarding AmnioClear™**

77.    Upon information and belief, Liventa has made and continues to make false and misleading descriptions and representations of fact concerning AmnioClear™ on its website and in other promotional materials.

78.    Liventa's website states that AmnioClear™ "uses a ***patented tissue*** that is a combination of amnion and chorion—two layers of the placenta," when, upon information and belief, that tissue is not based on patented technology, owned or licensed by Liventa.   Indeed, upon information and belief, Liventa neither owns nor has a license to any patented technologies associated with or covering the processing of its AmnioClear™ product.

79.    In addition, Liventa's website falsely and misleadingly claims that "AmnioClear™ is the only dry, shelf stable amnion based allograft processed under patent protected techniques."  Upon information and belief, AmnioClear™ is not the only dry shelf stable amnion based allograft processed under patented techniques.  For example, MiMedx markets and sells its amnion based allograft products, including AmnioFix® and EpiFix®, using patented techniques.

80.   Upon information and belief, Liventa's false and misleading statements go beyond those made on its website and promotional materials.

81.   Upon information and belief, Liventa has distributed misleading information to prospective investors in an effort to raise investment capital and promote AmnioClear™.   Such materials rely on clinical and case studies of products which as set forth above, were actually processed using MiMedx's proprietary technology.

82.   Upon information and belief, Liventa has also included statements misleadingly declaring that Liventa's products are the only allograft membrane biomaterials for surgical covering on the market.   Such statements are false and misleading, because, among other reasons, Liventa's Chief Executive Officer Robin Young is directly aware of and has knowledge concerning MiMedx's AmnioFix® and EpiFix® product lines.

83.   Upon information and belief, through at least materials accessible on Liventa's website and through materials distributed to customers and/or prospective customers, Liventa has marketed its AmnioClear™ product using these false statements in an effort to induce customers and/or prospective customers to believe that the AmnioClear™ product has these claimed attributes, when it does not.

84.   Upon information and belief, Liventa has made these false and misleading statements knowingly, with an intention to deceive Liventa's customers and/or prospective customers into believing that these statements are true, when they are not.

85.   Upon information and belief, Liventa performed the aforementioned acts globally, as well as within the United States and in this judicial district.

86.   These false and misleading statements are, by their very nature, material to the purchasing decisions of Liventa's and MiMedx's customers.

87.   These false and misleading statements and representations cause injury to MiMedx, the leading processor, marketer, and distributor of human amniotic tissue in the United States.  Such injury includes, upon information and belief, loss of sales to existing and prospective MiMedx customers.

## C.    Clinical Studies Falsely Attributed to Revitalon™

88.   Upon information and belief, Medline has knowingly made, and continues to make, false and misleading statements regarding the use of Medline's Revitalon™ product, as processed by MTF, in clinical studies.

89.   Upon information and belief, through materials distributed to customers and/or prospective customers, potential investors, and Medline's own sales personnel, Medline has marketed its Revitalon™ product as being the

22

subject of certain clinical studies in an effort to induce existing and prospective customers that its Revitalon™ product was the subject of these studies, when it was not. Rather, upon information and belief, the studies relied upon were done on MiMedx's processed tissue as is visually apparent from the "SB" (*i.e.*, "Surgical Biologics") embossment from photographs depicted in these studies.

90. Upon information and belief, Medline has distributed misleading information to customers and/or prospective customers, potential investors, and Medline's own sales personnel in an effort to wrongfully promote Revitalon™. Such materials, upon information and belief, rely on clinical and case studies of products which were actually processed using MiMedx's proprietary technology, not Medline's.

91. Upon information and belief, through at least materials distributed and/or provided to customers and/or prospective customers, potential investors, and Medline's own sales personnel, Medline has marketed its Revitalon™ product using these false statements in an effort to induce customers and/or prospective customers to believe that the Revitalon™ product has certain claimed attributes, when it does not.

92. Upon information and belief, Medline has made these false and misleading statements knowingly, with an intention to deceive Medline's

customers and/or prospective customers, potential investors, and Medline's own sales personnel into believing their statements are true, when they are not.

93.   Upon   information   and   belief,   Medline   performed   the aforementioned acts globally, as well as within the United States and in this judicial district.

94.   These false and misleading statements are, by their very nature, material to the purchasing decisions of Medline's and MiMedx's customers and/or prospective customers.

95.   These false and misleading statements and representations cause injury to MiMedx, the leading processor, marketer, and distributor of human amniotic tissue in the United States.  Such injury includes, upon information and belief, loss of sales to existing and potential MiMedx customers and/or prospective customers.

**D.   False and Misleading Statements Regarding Revitalon™**

96.   Upon information and belief, Medline has made and continues to make false and misleading descriptions and representations of fact concerning Revitalon™ in its promotional materials and sales materials distributed to third parties, including customers and/or prospective customers, potential investors, and Medline's own sales personnel.  Upon information and belief, through at

least such materials, Medline misleadingly represents that its Revitalon™ has certain differentiating attributes over competing products, including MiMedx's products.

97.   Upon information and belief, through at least materials accessible on Medline's website and through materials distributed to customers and/or prospective customers, potential investors, and Medline's own sales personnel, Medline has marketed its Revitalon™ product by promoting its product using these false statements with respect to its nature, quality and processing in an effort to deceive customers and/or prospective customers that the Revitalon™ product has preferred claimed attributes over other products in the market, including MiMedx's products, when it does not.

98.   Upon information and belief, Medline has made these false and misleading statements knowingly, with an intention to deceive Medline's customers and/or prospective customers into believing that these statements are true, when they are not.

99.   Upon information and belief, Medline performed the aforementioned acts globally, as well as within the United States and this judicial district.

25

100. These false and misleading statements are, by their very nature, material to the purchasing decisions of Medline's and MiMedx's existing and prospective customers.

101. These false and misleading statements and representations cause injury to MiMedx, the leading processor, marketer, and distributor of human amniotic tissue in the United States. Such injury includes, upon information and belief, loss of sales to existing and potential MiMedx existing and prospective customers.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 8,323,701 BY MTF

102. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 101 above, inclusive.

103. Upon information and belief, MTF has infringed and/or continues to infringe one or more claims of the '701 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing AmnioClear™ product and/or the infringing Revitalon™ product.

104. MiMedx has been damaged by MTF's past and continuing infringement of the '701 patent in an amount to be determined at trial.

105.  MiMedx has been and continues to be irreparably injured by MTF's past and continuing infringement of the '701 patent, and MTF's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

106.  MiMedx is entitled to monetary damages from MTF's unauthorized infringement in an amount to be determined at trial.

107.  Upon information and belief, MTF has had constructive knowledge of the '701 patent at least by virtue of the identification of the '701 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents as well as Plaintiffs providing MTF actual notice of the '701 patent.

108.  Upon information and belief, MTF acted despite an objectively high likelihood that its actions constituted infringement of the '701 patent.  Upon information and belief, MTF's risk of intentionally infringing the '701 patent was either known or so obvious that it should have been known to MTF. Accordingly, MTF's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '701 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35

U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 8,323,701 BY LIVENTA

109. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 108 above, inclusive.

110. Upon information and belief, Liventa has infringed and/or continues to infringe one or more claims of the '701 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing AmnioClear™ product.

111. Upon information and belief, Liventa directly and through authorized agents, sells and offers for sale within the United States the infringing AmnioClear™ product to hospitals, physicians, clinics and wound care centers throughout the United States.

112. MiMedx has been damaged by Liventa's past and continuing infringement of the '701 patent in an amount to be determined at trial.

113. MiMedx has been and continues to be irreparably injured by Liventa's past and continuing infringement of the '701 patent, and Liventa's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

114. MiMedx is entitled to monetary damages from Liventa's unauthorized infringement in an amount to be determined at trial.

115. Upon information and belief, Liventa has had constructive knowledge of the '701 patent at least by virtue of the identification of the '701 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents as well as Plaintiffs providing Liventa actual notice of the '701 patent.

116. Upon information and belief, Liventa acted despite an objectively high likelihood that its actions constituted infringement of the '701 patent. Upon information and belief, Liventa's risk of intentionally infringing the '701 patent was either known or so obvious that it should have been known to Liventa. Accordingly, Liventa's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '701 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 8,323,701 BY MEDLINE

117. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 116 above, inclusive.

29

118. Upon information and belief, Medline has and/or continues to infringe one or more claims of the '701 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing Revitalon™ product.

119. Upon information and belief, Medline directly and through authorized agents, sells and offers for sale within the United States the infringing Revitalon™ product to hospitals, physicians, clinics and wound care centers throughout the United States.

120. MiMedx has been damaged by Medline's past and continuing infringement of the '701 patent in an amount to be determined at trial.

121. MiMedx has been and continues to be irreparably injured by Medline's past and continuing infringement of the '701 patent, and Medline's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

122. MiMedx is entitled to monetary damages from Medline's unauthorized infringement in an amount to be determined at trial.

123. Upon information and belief, Medline has had constructive knowledge of the '701 patent at least by virtue of the identification of the '701 patent on the AminoFix® and EpiFix® product labels, package information

and/or marketing materials by referencing www.mimedx.com/patents as well as Plaintiffs providing Medline actual notice of the '701 patent.

124.  Upon information and belief, Medline acted despite an objectively high likelihood that its actions constituted infringement of the '701 patent. Upon information and belief, Medline's risk of intentionally infringing the '701 patent was either known or so obvious that it should have been known to Medline.   Accordingly, Medline's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '701 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

**COUNT IV**
**INFRINGEMENT  OF U.S. PATENT  NO. 8,642,092 BY MTF**

125.  Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 124 above, inclusive.

126.  Upon information and belief, MTF has infringed and/or continues to infringe one or more claims of the '092 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing AmnioClear™ product and/or the infringing Revitalon™ product.

31

127. MiMedx has been damaged by MTF's past and continuing infringement of the '092 patent in an amount to be determined at trial.

128. MiMedx has been and continues to be irreparably injured by MTF's past and continuing infringement of the '092 patent, and MTF's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

129. MiMedx is entitled to monetary damages from MTF's unauthorized infringement in an amount to be determined at trial.

130. Upon information and belief, MTF has had constructive knowledge of the '092 patent at least by virtue of the identification of the '092 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents.

131. Upon information and belief, MTF acted despite an objectively high likelihood that its actions constituted infringement of the '092 patent. Upon information and belief, MTF's risk of intentionally infringing the '092 patent was either known or so obvious that it should have been known to MTF. Accordingly, MTF's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '092 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35

U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT V
## INFRINGEMENT OF U.S. PATENT NO. 8,642,092 BY LIVENTA

132. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 131 above, inclusive.

133. Upon information and belief, Liventa has infringed and/or continues to infringe one or more claims of the '092 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing AmnioClear™ product.

134. Upon information and belief, Liventa directly and through authorized agents, sells and offers for sale within the United States the infringing AmnioClear™ product to hospitals, physicians, clinics and wound care centers throughout the United States.

135. MiMedx has been damaged by Liventa's past and continuing infringement of the '092 patent in an amount to be determined at trial.

136. MiMedx has been and continues to be irreparably injured by Liventa's past and continuing infringement of the '092 patent, and Liventa's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

137. MiMedx is entitled to monetary damages from Liventa's unauthorized infringement in an amount to be determined at trial.

138. Upon information and belief, Liventa has had constructive knowledge of the '092 patent at least by virtue of the identification of the '092 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents.

139. Upon information and belief, Liventa acted despite an objectively high likelihood that its actions constituted infringement of the '092 patent. Upon information and belief, Liventa's risk of intentionally infringing the '092 patent was either known or so obvious that it should have been known to Liventa. Accordingly, Liventa's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '092 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT VI
## INFRINGEMENT OF U.S. PATENT NO. 8,642,092 BY MEDLINE

140. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 139 above, inclusive.

141. Upon information and belief, Medline has infringed and/or continues to infringe one or more claims of the '092 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing Revitalon™ product.

142. Upon information and belief, Medline directly and through authorized agents, sells and offers for sale within the United States the infringing Revitalon™ product to hospitals, physicians, clinics and wound care centers throughout the United States.

143. MiMedx has been damaged by Medline's past and continuing infringement of the '092 patent in an amount to be determined at trial.

144. MiMedx has been and continues to be irreparably injured by Medline's past and continuing infringement of the '092 patent, and Medline's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

145. MiMedx is entitled to monetary damages from Medline's unauthorized infringement in an amount to be determined at trial.

146. Upon information and belief, Medline has had constructive knowledge of the '092 patent at least by virtue of the identification of the '092

patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents.

147. Upon information and belief, Medline acted despite an objectively high likelihood that its actions constituted infringement of the '092 patent. Upon information and belief, Medline's risk of intentionally infringing the '092 patent was either known or so obvious that it should have been known to Medline. Accordingly, Medline's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '092 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT VII
## INFRINGEMENT OF U.S. PATENT NO. 8,372,437 BY MTF

148. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 147 above, inclusive.

149. Upon information and belief, MTF has infringed and/or continues to infringe one or more claims of the '437 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing AmnioClear™ product and/or the infringing Revitalon™ product.

150. MiMedx has been damaged by MTF's past and continuing infringement of the '437 patent in an amount to be determined at trial.

151. MiMedx has been and continues to be irreparably injured by MTF's past and continuing infringement of the '437 patent, and MTF's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

152. MiMedx is entitled to monetary damages from MTF's unauthorized infringement in an amount to be determined at trial.

153. Upon information and belief, MTF has had constructive knowledge of the '437 patent at least by virtue of the identification of the '437 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents as well as Plaintiffs providing MTF actual notice of the '437 patent.

154. Upon information and belief, MTF acted despite an objectively high likelihood that its actions constituted infringement of the '437 patent. Upon information and belief, MTF's risk of intentionally infringing the '437 patent was either known or so obvious that it should have been known to MTF. Accordingly, MTF's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '437 patent, and

MiMedx accordingly is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT VIII
## INFRINGEMENT OF U.S. PATENT NO. 8,372,437 BY LIVENTA

155.  Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 154 above, inclusive.

156.  Upon information and belief, Liventa has infringed and/or continues to infringe one or more claims of the '437 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing AmnioClear™ product.

157.  Upon information and belief, Liventa directly and through authorized agents, sells and offers for sale within the United States the infringing AmnioClear™ product to hospitals, physicians, clinics and wound care centers throughout the United States.

158.  MiMedx has been damaged by Liventa's past and continuing infringement of the '437 patent in an amount to be determined at trial.

159.  MiMedx has been and continues to be irreparably injured by Liventa's past and continuing infringement of the '437 patent, and Liventa's

infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

160. MiMedx is entitled to monetary damages from Liventa's unauthorized infringement in an amount to be determined at trial.

161. Upon information and belief, Liventa has had constructive knowledge of the '437 patent at least by virtue of the identification of the '437 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents as well as Plaintiffs providing Liventa actual notice of the '437 patent.

162. Upon information and belief, Liventa acted despite an objectively high likelihood that its actions constituted infringement of the '437 patent. Upon information and belief, Liventa's risk of intentionally infringing the '437 patent was either known or so obvious that it should have been known to Liventa.  Accordingly, Liventa's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '437 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation  pursuant to 35 U.S.C. § 285.

## COUNT IX
## INFRINGEMENT  OF U.S. PATENT  NO. 8,372,437 BY MEDLINE

163.  Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 162 above, inclusive.

164. Upon  information  and  belief,  Medline  has  infringed  and/or continues to infringe one or more claims of the '437 patent, either literally or under  the  doctrine  of  equivalents,  by  manufacturing,  using,  selling  and/or offering for sale in the United States the infringing Revitalon™ product.

165. Upon  information  and  belief,  Medline  directly  and  through authorized  agents,  sells  and  offers  for  sale  within  the  United  States  the infringing Revitalon™ product to hospitals, physicians, clinics and wound care centers throughout the United States.

166. MiMedx  has  been  damaged  by  Medline's  past  and  continuing infringement of the '437 patent in an amount to be determined at trial.

167. MiMedx  has  been  and  continues  to  be  irreparably  injured  by Medline's  past  and  continuing  infringement  of  the  '437  patent,  and  Medline's infringing  activities  will  continue  unless  enjoined  by  this  Court  pursuant  to  35 U.S.C. § 283.

168. MiMedx  is  entitled  to  monetary  damages  from  Medline's unauthorized infringement in an amount to be determined at trial.

40

169. Upon information and belief, Medline has had constructive knowledge of the '437 patent at least by virtue of the identification of the '437 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents as well as Plaintiffs providing Medline actual notice of the '437 patent.

170. Upon information and belief, Medline acted despite an objectively high likelihood that its actions constituted infringement of the '437 patent. Upon information and belief, Medline's risk of intentionally infringing the '437 patent was either known or so obvious that it should have been known to Medline. Accordingly, Medline's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '437 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT X
## INFRINGEMENT OF U.S. PATENT NO. 8,597,687 BY MTF

171. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 170 above, inclusive.

172. Upon information and belief, MTF has infringed and/or continues to infringe one or more claims of the '687 patent, either literally or under the

41

doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing AmnioClear™ product and/or the infringing Revitalon™ product.

173.  MiMedx has been damaged by MTF's past and continuing infringement of the '687 patent in an amount to be determined at trial.

174.  MiMedx has been and continues to be irreparably injured by MTF's past and continuing infringement of the '687 patent, and MTF's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

175.  MiMedx is entitled to monetary damages from MTF's unauthorized infringement in an amount to be determined at trial.

176.  Upon information and belief, MTF has had constructive knowledge of the '687 patent at least by virtue of the identification of the '687 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents as well as Plaintiffs providing MTF actual notice of the '687 patent.

177.  Upon information and belief, MTF acted despite an objectively high likelihood that its actions constituted infringement of the '687 patent.  Upon information and belief, MTF's risk of intentionally infringing the '687 patent

42

was either known or so obvious that it should have been known to MTF. Accordingly, MTF's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '687 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT XI
## INFRINGEMENT OF U.S. PATENT NO. 8,597,687 BY LIVENTA

178.  Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 177 above, inclusive.

179.  Upon information and belief, Liventa has infringed and/or continues to infringe one or more claims of the '687 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing AmnioClear™ product.

180.  Upon information and belief, Liventa directly and through authorized agents, sells and offers for sale within the United States the infringing AmnioClear™ product to hospitals, physicians, clinics and wound care centers throughout the United States.

181.  MiMedx has been damaged by Liventa's past and continuing infringement of the '687 patent in an amount to be determined at trial.

43

182. MiMedx has been and continues to be irreparably injured by Liventa's past and continuing infringement of the '687 patent, and Liventa's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

183. MiMedx is entitled to monetary damages from Liventa's unauthorized infringement in an amount to be determined at trial.

184. Upon information and belief, Liventa has had constructive knowledge of the '687 patent at least by virtue of the identification of the '687 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents as well as Plaintiffs providing Liventa actual notice of the '687 patent.

185. Upon information and belief, Liventa acted despite an objectively high likelihood that its actions constituted infringement of the '687 patent. Upon information and belief, Liventa's risk of intentionally infringing the '687 patent was either known or so obvious that it should have been known to Liventa. Accordingly, Liventa's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '687 patent, and MiMedx accordingly is entitled to recover enhanced damages

pursuant to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT XII
## INFRINGEMENT OF U.S. PATENT NO. 8,597,687 BY MEDLINE

186. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 185 above, inclusive.

187. Upon information and belief, Medline has infringed and/or continues to infringe one or more claims of the '687 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing Revitalon™ product.

188. Upon information and belief, Medline directly and through authorized agents, sells and offers for sale within the United States the infringing Revitalon™ product to hospitals, physicians, clinics and wound care centers throughout the United States.

189. MiMedx has been damaged by Medline's past and continuing infringement of the '687 patent in an amount to be determined at trial.

190. MiMedx has been and continues to be irreparably injured by Medline's past and continuing infringement of the '687 patent, and Medline's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

191. MiMedx is entitled to monetary damages from Medline's unauthorized infringement in an amount to be determined at trial.

192. Upon information and belief, Medline has had constructive knowledge of the '687 patent at least by virtue of the identification of the '687 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents as well as Plaintiffs providing Medline actual notice of the '687 patent.

193. Upon information and belief, Medline acted despite an objectively high likelihood that its actions constituted infringement of the '687 patent. Upon information and belief, Medline's risk of intentionally infringing the '687 patent was either known or so obvious that it should have been known to Medline. Accordingly, Medline's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '687 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT XIII
## INFRINGEMENT OF U.S. PATENT NO. 8,703,207 BY MTF

194. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 193 above, inclusive.

195.  Upon information and belief, MTF has infringed and/or continues to infringe one or more claims of the '207 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing AmnioClear™ product and/or the infringing Revitalon™ product.

196.  MiMedx has been damaged by MTF's infringement of the '207 patent in an amount to be determined at trial.

197.  MiMedx has been and continues to be irreparably injured by MTF's infringement of the '207 patent, and MTF's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

198.  MiMedx is entitled to monetary damages from MTF's unauthorized infringement in an amount to be determined at trial.

## COUNT XIV
## INFRINGEMENT OF U.S. PATENT NO. 8,703,207 BY LIVENTA

199.  Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 198 above, inclusive.

200.  Upon information and belief, Liventa has infringed and/or continues to infringe one or more claims of the '207 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing AmnioClear™ product.

201. Upon information and belief, Liventa directly and through authorized agents, sells and offers for sale within the United States the infringing AmnioClear™ product to hospitals, physicians, clinics and wound care centers throughout the United States.

202. MiMedx has been damaged by Liventa's infringement of the '207 patent in an amount to be determined at trial.

203. MiMedx has been and continues to be irreparably injured by Liventa's infringement of the '207 patent, and Liventa's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

204. MiMedx is entitled to monetary damages from Liventa's unauthorized infringement in an amount to be determined at trial.

## COUNT XV
## INFRINGEMENT OF U.S. PATENT NO. 8,703,207 BY MEDLINE

205. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 204 above, inclusive.

206. Upon information and belief, Medline has and/or continues to infringe one or more claims of the '207 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing Revitalon™ product.

207. Upon information and belief, Medline directly and through authorized agents, sells and offers for sale within the United States the infringing Revitalon™ product to hospitals, physicians, clinics and wound care centers throughout the United States.

208. MiMedx has been damaged by Medline's infringement of the '207 patent in an amount to be determined at trial.

209. MiMedx has been and continues to be irreparably injured by Medline's infringement of the '207 patent, and Medline's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

210. MiMedx is entitled to monetary damages from Medline's unauthorized infringement in an amount to be determined at trial.

## COUNT XVI
## INFRINGEMENT  OF U.S. PATENT  NO. 8,709,494 BY MTF

211. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 210 above, inclusive.

212. Upon information and belief, MTF has infringed and/or continues to infringe one or more claims of the '494 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale

in the United States the infringing AmnioClear™ product and/or the infringing Revitalon™ product.

213.  MiMedx has been damaged by MTF's infringement of the '494 patent in an amount to be determined at trial.

214.  MiMedx has been and continues to be irreparably injured by MTF's infringement of the '494 patent, and MTF's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

215.  MiMedx is entitled to monetary damages from MTF's unauthorized infringement in an amount to be determined at trial.

## COUNT XVII
## INFRINGEMENT  OF U.S. PATENT  NO. 8,709,494 BY LIVENTA

216.  Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 215 above, inclusive.

217.  Upon information and belief, Liventa has infringed and/or continues to infringe one or more claims of the '494 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing AmnioClear™ product.

218.  Upon information and belief, Liventa directly and through authorized agents, sells and offers for sale within the United States the

infringing AmnioClear™ product to hospitals, physicians, clinics and wound care centers throughout the United States.

219. MiMedx has been damaged by Liventa's infringement of the '494 patent in an amount to be determined at trial.

220. MiMedx has been and continues to be irreparably injured by Liventa's infringement of the '494 patent, and Liventa's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

221. MiMedx is entitled to monetary damages from Liventa's unauthorized infringement in an amount to be determined at trial.

## COUNT XVIII
## INFRINGEMENT OF U.S. PATENT NO. 8,709,494 BY MEDLINE

222. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 221 above, inclusive.

223. Upon information and belief, Medline has and/or continues to infringe one or more claims of the '494 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing Revitalon™ product.

224. Upon information and belief, Medline directly and through authorized agents, sells and offers for sale within the United States the

infringing Revitalon™ product to hospitals, physicians, clinics and wound care centers throughout the United States.

225. MiMedx has been damaged by Medline's infringement of the '494 patent in an amount to be determined at trial.

226. MiMedx has been and continues to be irreparably injured by Medline's infringement of the '494 patent, and Medline's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283. MiMedx is entitled to monetary damages from Medline's unauthorized infringement in an amount to be determined at trial.

## COUNT XIX
## FALSE ADVERTISING IN VIOLATION OF SECTION 43(a)(1)(B) OF THE LANHAM ACT, 15 U.S.C. § 1125 BY LIVENTA

227. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 226 above, inclusive.

228. Liventa's aforementioned statements made on at least its website and in its promotional materials are materially false statements or misleading descriptions of fact that are likely to cause consumer confusion, mistake or deception as to its AmnioClear™ product.

229. Such material misrepresentations are the type upon which customers or prospective customers have relied and will rely. Liventa's actions therefore

mislead and harm customers and consumers as well as damage MiMedx's sales, good name and reputation in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

230.  Upon information and belief, Liventa had and has knowledge that the statements regarding AmnioClear™ referenced herein are false and misleading, and therefore the aforesaid acts were undertaken willfully and deliberately and with the intention of causing confusion, mistake, or deception.

231.  The aforesaid acts of Liventa have caused, and will continue to cause, damage to MiMedx in an amount to be determined at trial.

232.  The aforesaid acts of Liventa have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to MiMedx for which MiMedx has no adequate remedy at law.

## COUNT XX
## FALSE ADVERTISING IN VIOLATION OF SECTION 43(a)(1)(B) OF THE LANHAM ACT, 15 U.S.C. § 1125 BY MEDLINE

233.  Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 232 above, inclusive.

234.  Medline's aforementioned statements made on at least its website and in its promotional and sales materials are materially false statements or

misleading descriptions of fact that are likely to cause consumer confusion, mistake or deception as to its Revitalon™ product.

235. Such material misrepresentations are the type upon which customers or prospective customers have relied and will rely. Medline's actions therefore mislead and harm customers and consumers as well as damage MiMedx's sales, good name and reputation in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

236. Upon information and belief, Medline had and has knowledge that the statements regarding Revitalon™ referenced herein are false and misleading, and therefore the aforesaid acts were undertaken willfully and deliberately and with the intention of causing confusion, mistake, or deception.

237. The aforesaid acts of Medline have caused, and will continue to cause, damage to MiMedx in an amount to be determined at trial.

238. The aforesaid acts of Medline have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to MiMedx for which MiMedx has no adequate remedy at law.

## COUNT XXI
## FEDERAL UNFAIR COMPETITION IN VIOLATION OF SECTION 43(a)(1)(A) OF THE LANHAM ACT, 15 U.S.C. § 1125 BY LIVENTA

239. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 238 above, inclusive.

240. Liventa's aforementioned statements made on at least its website and in its promotional materials are materially false statements or misleading descriptions of fact that are likely to cause consumer confusion, mistake or deception as to the affiliation, connection or association of Liventa's AmnioClear™ product with certain studies and/or features.

241. Liventa, therefore, has falsely promoted AmnioClear™ in interstate commerce so as to cause confusion, mistake or deception amongst the public as to the affiliation, connection, approval, origin and sponsorship of its product.

242. Such false promotions are the type upon which customers and/or prospective customers have, and will, rely. The aforesaid acts have caused, and are likely to continue to cause injury to the public and to MiMedx's business and result in Liventa unfairly competing with MiMedx.

243. Upon information and belief, Liventa had and has knowledge that the statements regarding AmnioClear™ referenced herein are false and misleading, and likely to cause confusion, and therefore the aforesaid acts were

undertaken willfully and deliberately and with the intention of causing confusion, mistake, or deception.

244. The aforesaid acts of Liventa have caused, and will continue to cause, damage to MiMedx in an amount to be determined at trial.

245. The aforesaid acts of Liventa have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to MiMedx for which MiMedx has no adequate remedy at law.

## COUNT XXII
## FEDERAL UNFAIR COMPETITION IN VIOLATION OF SECTION 43(a)(1)(A) OF THE LANHAM ACT, 15 U.S.C. § 1125 BY MEDLINE

246. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 245 above, inclusive.

247. Medline's aforementioned statements made on at least its website and in its promotional and sales materials are materially false statements or misleading descriptions of fact that are likely to cause consumer confusion, mistake or deception as to the affiliation, connection or association of Medline's Revitalon™ product with certain studies and/or features.

248. Medline, therefore, has falsely promoted Revitalon™ in interstate commerce so as to cause confusion, mistake or deception amongst the public as to the affiliation, connection, approval, origin and sponsorship of its product.

249. Such false promotions are the type upon which customers and/or prospective customers have, and will, rely.  The aforesaid acts have caused, and are likely to continue to cause injury to the public and to MiMedx's business and result in Medline unfairly competing with MiMedx.

250. Upon information and belief, Medline had and has knowledge that the statements regarding Revitalon™ referenced herein are false and misleading, and likely to cause confusion, and therefore the aforesaid acts were undertaken willfully and deliberately and with the intention of causing confusion, mistake, or deception.

251. The aforesaid acts of Medline have caused, and will continue to cause, damage to MiMedx in an amount to be determined at trial.

The aforesaid acts of Medline have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to MiMedx for which MiMedx has no adequate remedy at law.

## COUNT XXIII
## FALSE ADVERTISING IN VIOLATION OF
## THE GEORGIA FALSE ADVERTISING
## STATUTE, O.C.G.A. §§ 10-1-420 *et seq.* BY LIVENTA

252. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 251 above, inclusive.

253. Liventa's representations in the sale of goods or services on its website and in its promotional materials that misleadingly rely on unrelated studies and falsely represent attributes of the AmnioClear™ product are untrue or fraudulent and are known by Liventa, or should be known by the exercise of reasonable care, to be untrue or fraudulent.

254. These misrepresentations which were used on Liventa's website and placed on marketing materials that traveled in interstate commerce, materially misrepresent the nature, characteristics and qualities of Liventa's AmnioClear™ product.

255. Such untrue or fraudulent representations are the type upon which customers or prospective customers have, and will, rely. Liventa's actions therefore mislead and harm customers and consumers as well as damage MiMedx's sales, good name and reputation in violation of the Georgia False Advertising Statute, O.C.G.A. §§ 10-1-421(a).

256. Liventa's statements made on its website and in its promotional materials that claim or suggest that the AmnioClear™ product is the only patented amniotic tissue graft in the market are also untrue or fraudulent and are known by Liventa, or should be known by the exercise of reasonable care, to be untrue or fraudulent. These misrepresentations which were used on Liventa's website and

placed on marketing materials that traveled in interstate commerce, materially misrepresent the nature, characteristics and qualities of Liventa's AmnioClear™ product. Such material misrepresentations are the type upon which customers or prospective customers have relied and will rely. Liventa's actions therefore mislead and harm customers and consumers as well as damage MiMedx's sales, good name and reputation in violation of the Georgia False Advertising Statute, O.C.G.A. §§ 10-1-421(a).

257. The aforesaid acts of Liventa have caused, and will continue to cause, damage to MiMedx in an amount to be determined at trial.

258. The aforesaid acts of Liventa have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to MiMedx for which MiMedx has no adequate remedy at law.

## COUNT XXIV
## FALSE ADVERTISING IN VIOLATION OF
## THE GEORGIA FALSE ADVERTISING
## STATUTE, O.C.G.A. §§ 10-1-420 *et seq.* BY MEDLINE

259. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 258 above, inclusive.

260. Medline's representations in the sale of goods or services on its website and in its promotional and sales materials that misleadingly rely on unrelated studies and falsely represent attributes of the Revitalon™ product are

untrue or fraudulent and are known by Medline, or should be known by the exercise of reasonable care, to be untrue or fraudulent.

261.   These misrepresentations which were used on Medline's website and placed on marketing materials that traveled in interstate commerce, materially misrepresent the nature, characteristics and qualities of Medline's Revitalon™ product.

262.   Such untrue or fraudulent representations are the type upon which customers or prospective customers have relied, and will, rely.   Medline's actions therefore mislead and harm customers and consumers as well as damage MiMedx's sales, good name and reputation in violation of the Georgia False Advertising Statute, O.C.G.A. §§ 10-1-421(a).

263.   The aforesaid acts of Medline have caused, and will continue to cause, damage to MiMedx in an amount to be determined at trial.

264.   The aforesaid acts of Medline have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to MiMedx for which MiMedx has no adequate remedy at law.

## COUNT XXV
## DECEPTIVE TRADE PRACTICES IN VIOLATION OF
## THE GEORGIA DECEPTIVE TRADE PRACTICES ACT,
## O.C.G.A. §§ 10-1-370 *et seq.* BY LIVENTA

265.  Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 264 above, inclusive.

266.  Liventa's representations in the sale of goods or services on its website and in its promotional materials that misleadingly rely on unrelated studies and falsely represent attributes of the AmnioClear™ product are untrue or fraudulent and are known by Liventa, or should be known by the exercise of reasonable care, to be untrue or fraudulent.

267.  These misrepresentations which were used on Liventa's website and placed on marketing materials that traveled in interstate commerce, cause likelihood of confusion and misunderstanding as to the source, sponsorship and/or approval of Liventa's AmnioClear™ product.

268.  These misrepresentations which were used on Liventa's website and placed on marketing materials that traveled in interstate commerce, cause likelihood of confusion and misunderstanding as to the affiliation, connection, and/or association of Liventa's AmnioClear™ product.

269.  Liventa's representations in the sale of goods or services on its website and in its promotional materials that misleadingly rely on unrelated

studies and falsely represent attributes of the AmnioClear™ product represent that the AmnioClear™ product has sponsorship, approval and/or characteristics that it does not have, and a sponsorship, approval, affiliation and/or connection that it does not have.

270. Such untrue or fraudulent representations are the type upon which customers or potential customers have, and will, rely. Liventa's actions therefore mislead and harm customers and consumers as well as damage MiMedx's sales, good name and reputation and constitute deceptive trade practices in violation of the Georgia Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-372.

271. The aforesaid acts of Liventa have caused, and will continue to cause, damage to MiMedx in an amount to be determined at trial.

272. The aforesaid acts of Liventa have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to MiMedx for which MiMedx has no adequate remedy at law.

## COUNT XXVI
## DECEPTIVE TRADE PRACTICES IN VIOLATION OF
## THE GEORGIA DECEPTIVE TRADE PRACTICES ACT,
## O.C.G.A. §§ 10-1-370 *et seq.* BY MEDLINE

273. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 272 above, inclusive.

274. Medline's representations in the sale of goods or services on its website and in its promotional and sales materials that misleadingly rely on unrelated studies and falsely represent attributes of the Revitalon™ product are untrue or fraudulent and are known by Medline, or should be known by the exercise of reasonable care, to be untrue or fraudulent.

275. These misrepresentations which were used on Medline's website and placed on marketing materials that traveled in interstate commerce, cause likelihood of confusion and misunderstanding as to the source, sponsorship and/or approval of Medline's Revitalon™ product.

276. These misrepresentations which were used on Medline's website and placed on marketing materials that traveled in interstate commerce, cause likelihood of confusion and misunderstanding as to the affiliation, connection and/or association of Medline's Revitalon™ product.

277. Medline's representations in the sale of goods or services on its website and in its promotional materials that misleadingly rely on unrelated studies and falsely represent attributes of the Revitalon™ product represent that the Revitalon™ product has sponsorship, approval and/or characteristics that it does not have, and a sponsorship, approval, affiliation and/or connection that it does not have.

278.  Such untrue or fraudulent representations are the type upon which customers or prospective customers have, and will, rely.  Medline's actions therefore mislead and harm customers and consumers as well as damage MiMedx's sales, good name and reputation and constitute deceptive trade practices in violation of the Georgia Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-372.

279.  The aforesaid acts of Medline have caused, and will continue to cause, damage to MiMedx in an amount to be determined at trial.

280.  The aforesaid acts of Medline's have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to MiMedx for which MiMedx has no adequate remedy at law.

## COUNT XXVII
## COMMON LAW UNFAIR COMPETITION BY LIVENTA

281.  Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 280 above, inclusive.

282.  Liventa has made false statements to the public and its existing and prospective customers with the intent of deceiving and misleading the public as to the quality and nature of its product.

283.  The aforesaid acts have enabled Liventa to misappropriate the labors and expenditures of MiMedx in developing the market for wound

biologics products as well as the spine and orthopedics market in violation of Georgia common law.

284. Additionally, the aforesaid acts have caused, and are likely to continue to cause injury to the public and to MiMedx's business reputation, and result in Liventa unfairly competing with MiMedx.

285. The aforesaid acts were undertaken willfully and deliberately.

286. The aforesaid acts of Liventa have caused, and will continue to cause, damage to MiMedx in an amount to be determined at trial.

287. The aforesaid acts of Liventa have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to MiMedx for which MiMedx has no adequate remedy at law.

## COUNT XXVIII
## COMMON LAW UNFAIR COMPETITION BY MEDLINE

288. Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 287 above, inclusive.

289. Medline has made false statements to the public and its existing and prospective customers with the intent of deceiving and misleading the public as to the quality and nature of its product.

290. The aforesaid acts have enabled Medline to misappropriate the labors and expenditures of MiMedx in developing the market for wound

biologics products as well as the spine and orthopedics market in violation of Georgia common law.

291. Additionally, the aforesaid acts have caused, and are likely to continue to cause injury to the public and to MiMedx's business reputation, and result in Medline unfairly competing with MiMedx.

292. The aforesaid acts were undertaken willfully and deliberately.

293. The aforesaid acts of Medline have caused, and will continue to cause, damage to MiMedx in an amount to be determined at trial.

294. The aforesaid acts of Medline have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to MiMedx for which MiMedx has no adequate remedy at law.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

A.      Enter judgment that Defendants have infringed one or more of the claims of the '701 patent and that Defendants' infringement has been willful;

B.      Enter judgment that Defendants have infringed one or more of the claims of the '092 patent and that Defendants' infringement has been willful;

C.     Enter judgment that Defendants have infringed one or more of the claims of the '437 patent and that Defendants' infringement has been willful;

D.     Enter judgment that Defendants have infringed one or more of the claims of the '687 patent and that Defendants' infringement has been willful;

E.     Enter judgment that Defendants have infringed one or more of the claims of the '207 patent;

F.     Enter judgment that Defendants have infringed one or more of the claims of the '494 patent;

G.     Award Plaintiff damages in an amount to be proved at trial that will adequately compensate Plaintiff for Defendants' infringement, but under no circumstances an amount less than a reasonable royalty, as authorized by 35 U.S.C. § 284;

H.     Increase the damages sustained by Plaintiff up to three times the amount of their actual damages, as authorized by 35 U.S.C. § 284;

I.     Award Plaintiff its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285;

J.     Award Plaintiff prejudgment interest and costs pursuant to 35 U.S.C. § 284;

K.     Award Plaintiff damages in an amount to be proved at trial that will adequately compensate Plaintiff for Defendant Liventa's and Medline's false advertising, false representations, false descriptions, false designations of origin, deceptive trade practices and unfair competition as described above, together with appropriate interest on such damages, and in the case of damages resulting from Defendant Liventa's and Medline's violations of the Lanham Act, such damages be trebled pursuant to 15 U.S.C. § 1117;

L.     The Court order Defendant Liventa and Medline to account for and disgorge and pay to Plaintiff all gains, profits, savings, and advantages realized by Defendant Liventa and Medline from their false advertising, false representations, false descriptions, false designations of origin, deceptive trade practices and unfair competition as described above, and in the case of damages resulting from Defendant Liventa and Medline's  violations of the Lanham Act, such damages be trebled pursuant to 15 U.S.C. § 1117;

M.     The Court order that Defendant Liventa and Medline engage in a program of corrective advertising, satisfactory to Plaintiff, to ameliorate the false and misleading information that Defendants have promulgated; and

N.     The Court grant such other, different, and additional relief as the Court deems just and proper.

Dated: April 29, 2014                  Respectfully submitted,

                                       ALSTON & BIRD LLP

                                       */s/ Suzanne Werner*
                                       Suzanne Werner
                                          (GA Bar # 321398)
                                       1201 West Peachtree St. NW
                                       Atlanta, GA 30309
                                       Tel: (404) 881-7168
                                       Fax: (404) 253-8368
                                       suzanne.werner@alston.com

                                       Deepro R. Mukerjee
                                          *(pro hac vice application pending)*
                                       Thomas J. Parker
                                          *(pro hac vice application pending)*
                                       Poopak Banky
                                       90 Park Avenue
                                       New York, NY 10016
                                       Tel: (212) 210-9501
                                       Fax: (212) 210-9444
                                       deepro.mukerjee@alston.com
                                       thomas.parker@alston.com
                                       paki.banky@alston.com

                                       *Attorneys for Plaintiff MiMedx Group, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 29, 2014, I electronically filed the above document with the Clerk of Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

<u>/s/ Suzanne Werner</u>
Suzanne Werner
  (GA Bar # 321398)
ALSTON & BIRD LLP
1201 West Peachtree St. NW
Atlanta, GA 30309
Tel: (404) 881-7168
Fax: (404) 253-8368
suzanne.werner@alston.com

*Attorneys for Plaintiff MiMedx Group, Inc.*